UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANCIS SEPULVEDA,                    *
                                      *
        Plaintiff,                    *
                                      *
        v.                            *        Civil Action No. 14-cv-12776-ADB
                                      *
UMASS CORRECTIONAL HEALTH,            *
CARE, et al.,                         *
                                      *
        Defendants.                   *

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

BURROUGHS, D.J.

## I.    INTRODUCTION

Plaintiff Francis Sepulveda ("Mr. Sepulveda") is a state inmate incarcerated at

Massachusetts Correctional Institute, Norfolk ("MCI Norfolk"). His complaint in this case

alleges that the Massachusetts Department of Corrections (and numerous officials) have failed to

provide him with adequate medical care, in violation of his rights under the United States

Constitution, the Massachusetts Declaration of Rights, the Americans with Disabilities Act, and

the United Nations Convention Against Torture. Mr. Sepulveda's complaint also alleges state-

law tort claims for negligence, intentional infliction of emotional distress, and negligent

infliction of emotional distress.

Currently before the Court are motions to dismiss filed by three sets of defendants. First,

Defendant UMass Correctional Health Care ("UMCH") has moved to dismiss all claims pursuant

to Fed. R. Civ. P. 12(b)(1), on the grounds of sovereign immunity. [ECF No. 24]. Second,

Defendants Rebecca Lubelczyk, M.D. ("Dr. Lubelczyk") and Thomas Groblewski, M.D. ("Dr.

Groblewski") have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing

that Mr. Sepulveda fails to state a claim on which relief may be granted. [ECF No. 26]. Finally,

Defendants Massachusetts Department of Correction (the "DOC"), former DOC Commissioner Luis Spencer ("Spencer"), former MCI Norfolk Superintendent Gary Roden ("Spencer"), and Deputy Superintendent Cynthia Sumner ("Sumner") have also moved to dismiss all claims against them, citing a variety of legal grounds. [ECF No. 31].

For the reasons set forth in this Memorandum and Order, UMCH's Motion to Dismiss, and Defendants Lubelczyk and Groblewski's Motion to Dismiss are both <u>ALLOWED</u>. The DOC, Spencer, Sumner, and Roden's Motion to Dismiss is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>.

## II.   BACKGROUND

### A.  Procedural History

Initially, Mr. Sepulveda was a named plaintiff in <u>Stote v. UMass Correctional Health Care</u>, No. CIV.A. 13-10267-NMG, a civil rights action filed by fellow prisoner John E. Stote and more than 100 other current and former inmates at MCI Norfolk, all of whom alleged inadequate medical care in the prison. In an Order dated June 25, 2014, Judge Gorton ordered the plaintiffs' claims to be severed, and the Court opened a separate civil action for each individual plaintiff. Judge Gorton also ordered that the original complaint in the <u>Stote</u> case be docketed as the operative complaint for each individual plaintiff, unless and until that plaintiff elected to file an amended complaint. <u>Stote v. UMass Corr. Health Care</u>, No. CIV.A. 13-10267-NMG, 2014 WL 2916760, at *2–3 (D. Mass. June 25, 2014). Judge Gorton's Order also reminded plaintiffs that "the bar is somewhat high for stating a claim under 42 U.S.C. § 1983 for an Eighth Amendment violation based on inadequate medical care," and advised that each plaintiff "should make sure that the pleading sufficiently states his own claim." <u>Id.</u>

This action was opened on behalf of Mr. Sepulveda on June 27, 2014, with the <u>Stote</u> pleading serving as the Complaint. [ECF No. 1 ("Compl.")]. Although Mr. Sepulveda did not file an amended pleading, he indicated a desire to proceed with his case by filing a Motion for Leave to Proceed in forma pauperis. [ECF No. 4]. On January 29, 2015, the Court (Talwani, J.) allowed his Motion to proceed without paying filing fees, but after screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court also held that with respect to ten of the eighteen named defendants, it could not be "reasonably infer[red] from the alleged facts that these ten defendants were in any way involved in Sepulveda's medical care." [ECF No. 5]. Accordingly, the Court advised Mr. Sepulveda that if he did not file an amended complaint within 42 days setting forth the basis of his claims against those ten defendants, his claims against those defendants would be dismissed. [<u>Id.</u>]. Mr. Sepulveda did not file any amended complaint. Thus, this Court dismissed all claims against those ten defendants on May 6, 2015. [ECF No. 12].[1]

With respect to the eight remaining defendants, however, the Court (Talwani, J.) ordered summonses to issue. Those remaining defendants are: (1) UMCH; (2) the DOC; (3) Spencer; (4) Dr. Groblewski; (5) Dr. Lubelczyk; (6) Maureen Atkins, Health Services Administrator; (7) Roden, and (8) Sumner. The docket reflects that all defendants, with the exception of Atkins, have been served with process.[2] On June 9, 2015, UMCH filed a Motion to Dismiss [ECF No. 24], as did Drs. Groblewski and Lubelczyk [ECF No. 26]. The DOC, Spencer, Roden, and

---

[1] The ten previously-dismissed defendants are 1) UMass Medical School; (2) Commonwealth of Massachusetts; (3) Governor Deval Patrick; (4) Ellen Kurtz; (5) Linda Booth; (6) Catherine Burke; (7) Dr. King; (8) Lawrence Weiner; (9) Herbert Ddungo; and (10) Dyana Nickl. [<u>See</u> ECF No. 12].

[2] The Return of Service for Defendant Atkins notes that service by the U.S. Marshal was unsuccessful. [ECF No. 20]. Given that the time to serve this defendant has expired, all claims against Defendant Atkins are dismissed.

Sumner filed their Motion to Dismiss on June 25, 2015. [ECF No. 31]. The Court granted Mr.

Sepulveda's first request for an extension of time to respond to these motions, [ECF No. 35],

allowing him until September 5, 2015 to file an opposition or an amended complaint. On

September 11, 2015, Mr. Sepulveda filed yet another Motion for an Extension of Time, noting

that he was in the process of drafting an amended complaint. [ECF No. 37]. He also assured the

Court that no further extensions would be requested. [Id.]. The Court granted Mr. Sepulveda an

extension of time until December 5, 2015 to respond to the defendants' motions or file an

amended complaint. [ECF No. 38]. Mr. Sepulveda, however, has not filed any response or

amended pleading with the Court.

Accordingly, the Court will address the merits of the defendants' motions to dismiss,

using the original Stote complaint as the operative pleading document.

**B.  The Stote Complaint**

The Stote Complaint is voluminous, comprising more than 190 pages. The first 15 pages

contain general allegations describing "alleged systemic problems with the provision of medical

services at MCI Norfolk . . . ." Stote, 2014 WL 2916760, at *1. Those alleged problems include

> (1) lack of inmate access to medical professionals and specialists, (2) failure to
> provide services in a timely fashion, (3) failure to perform medically necessary
> tests, (4) failure properly to diagnose and treat a variety of conditions, including
> severe pain and dental conditions, (5) premature termination of treatment and
> medication, (6) failure to allow consistent access to medications, (7) failure to
> follow the direction of outside specialists, and (8) refusal to provide medical
> treatment because an inmate is new to MCI Norfolk, subject to disciplinary
> proceedings or going to be released.

Id. The plaintiffs also allege "inadequate staffing, an ineffective grievance procedure and inmate

difficulties in accessing their own medical records." Id. As previously noted by Judge Gorton,

however, these generalized allegations are of limited use in determining whether any individual

inmate's rights were violated, because "[e]ach inmate's right to relief will . . .  turn on matters of

4

proof involving his own medical conditions, injuries suffered, treatment received or denied." Id.
It is unclear which, if any, of the general allegations in the first 15 pages of the Stote Complaint
pertain to Mr. Sepulveda. And because Mr. Sepulveda has failed to file an amended pleading
clarifying which of these allegations apply to him, the Court declines to consider these
conclusory paragraphs for purposes of the Defendants' motions to dismiss.

Next, pages 16-21 of the Stote Complaint set forth an assertion of "Jurisdiction and
Venue," followed by a list of the 158 named Plaintiffs and similar list of the original defendants.
[ECF No. 1]. Thereafter, the Complaint details the specific complaints of each of the named
plaintiffs, including Mr. Sepulveda. [Id.] With regards to the pending motions to dismiss, the
Court will consider only those paragraphs in the Stote Complaint that set forth concrete facts
pertaining specifically to Mr. Sepulveda. [See Compl. ¶¶ 224–27].

The specific Counts (12 in total) begin on page 168 and assert the following legal claims:

Count I: Inadequate medical care, deliberate indifference and conspiracy

Count II: Torture and conspiracy in violation of international conventions and treaties

Count III: Religious Rights and conspiracy

Count IV: Retaliation and conspiracy

Count V: Equal Protection

Count VI: State constitutional rights

Count VII: Americans with Disability Act

Count VIII: Negligence

Count IX: Intentional infliction of emotional distress

Count X: Negligent infliction of emotional distress

Count XI: Failure to Train

Count XII: Future harm

The Court interprets the Complaint to state claims for: (1) violations of 42 U.S.C. § 1983, based on inadequate medical care in violation of plaintiffs' Eighth Amendment rights; (2) violations of 42 U.S.C. § 1983, based on deprivations of plaintiffs' equal protection rights under the Fourteenth Amendment; (3) conspiracy to violate plaintiffs' civil rights, in violation of 42 U.S.C. §§ 1983 and 1985; (4) violations of the United Nations Convention Against Torture; (5) violations of the Americans with Disabilities Act; (6) violations of the Massachusetts Declaration of Rights; (7) negligence; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. [Compl. ¶¶ 845–94].[3] The Complaint purports to name all defendants in both their official and individual capacities.

The Complaint requests relief in the form of (1) an injunction enjoining the defendants from violating the plaintiffs' rights; (2) injunctive relief in the form of an order requiring the DOC Commissioner to provide adequate medical care; (3) compensatory damages in the amount of $125 million; (4) punitive damages in the amount of $1 million; and (5) costs and attorneys' fees.

### C.  Factual Allegations

The Complaint alleges the following facts regarding Mr. Sepulveda's medical care at MCI Norfolk, which the Court accepts as true for purposes of the defendants' motions to dismiss.

---

[3] For purposes of the defendants' motions to dismiss, the Court presumes that Mr. Sepulveda asserts all of the claims and requests for relief included in the original Stote Complaint.

Mr. Sepulveda suffers from degenerative disc disease in his C5/C6 and C6/C7 vertebrae, causing pain that he describes as "constant and always a 10 on the one to ten scale." [Compl. ¶ 224]. He alleges that the pain wakes him up 3 to 5 times per night. [Id.]. Although he has been advised to try rolling up a towel at night, this does not relieve his pain. [Id.]. Mr. Sepulveda also experiences numbness in his shoulders, arms and hands, which is sometimes so severe that he cannot hold a toothbrush. Mr. Sepulveda alleges that he has been seen for these problems at Tufts New England Medical on "numerous" occasions. [Id.]. He alleges that each time he goes, the doctor states that he is "looking into something," but Mr. Sepulveda never hears back. Although Mr. Sepulveda has been prescribed various medications for these issues, including Neurontin (a nerve medication), he "does not like the way it makes him feel." [Id.]. Further, although Mr. Sepulveda specifically requested treatment in the form of a "Gel shot" injection, this treatment was refused by his providers at MCI-Norfolk. [Id.]. Mr. Sepulveda contends that the defendants' refusal to provide the Gel shot, or to prescribe any other effective pain medication, demonstrates that he is not receiving adequate medical care. [Id. ¶¶ 224–25].

Next, the Complaint alleges that Mr. Sepulveda is not receiving adequate treatment for various dental issues. [Id. ¶ 226]. He contends that he began to experience issues with his teeth in June of 2012, and that the dentist waited too long to fill his teeth, causing an infection. Mr. Sepulveda also alleges that in September 2012, he filed a complaint with Deputy Superintendent Sumner. Sumner responded to the complaint by saying that she had "inquired about his access to dental care" and was informed that he had "been examined multiple times by the dentist during this period of time," including an examination on June 20, and a filling on June 27. She noted that he was seen again on July 10 and 27, and referred for oral surgery. Mr. Sepulveda was also seen on August 8, 2012 and advised that another tooth needed to be extracted. Sumner also noted

that on August 8, 2012, Mr. Sepulveda was prescribed 20 days of Motrin for pain, and scheduled

for oral surgery. [Id.]. Mr. Sepulveda, however, alleges that Sumner's response failed to

acknowledge that he had been in pain well before he was treated for his dental issues, and that he

did not receive any pain medication until August 8, 2012. [Id.].

Mr. Sepulveda also alleges that he has pain in his right ankle, weakness and pain in both

Achilles tendons, bone spurs in both feet, and serious toenail fungus. [Id. ¶ 227]. He claims that

he has not received adequate medical care for these problems, because he has "not been allowed

to see Dr. King the foot doctor." [Id.].

## III.   ANALYSIS

Each of the defendants has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on

the grounds that Mr. Sepulveda's Complaint fails to state any claim on which relief may be

granted. UMCH, the DOC, Sumner, Spencer, and Roden have each also raised the defense of

Eleventh Amendment sovereign immunity, which is typically presented in a motion to dismiss

for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

The Court will first analyze the sufficiency of Mr. Sepulveda's claims under the federal

pleading standard. Sovereign immunity will be addressed secondarily, and only to the extent that

Mr. Sepulveda's claims survive defendants' Rule 12(b)(6) motions. See Parella v. Ret. Bd. of

Rhode Island Emp. Ret. Sys., 173 F.3d 46, 53, 55 (1st Cir. 1999) (courts in this circuit are not

required to decide Eleventh Amendment issues before proceeding to examine the merits of a

plaintiff's claim); Greenless v. Almond, 277 F.3d 601, 608 (1st Cir. 2002) (where there is

"merits issue" that is dispositive, the "wiser approach" is to avoid reaching the constitutional

issue of Eleventh Amendment immunity).

**A. Adequacy of claims under Fed. R. Civ. P. 12(b)(6)**

**1. Legal standard**

Under the Federal Rules of Civil Procedure, a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted).

"Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán, 734 F.3d at 103 (internal quotations and citation omitted). In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). In this case, the Court construes Mr. Sepulveda's complaint liberally because it was filed pro se. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). "However, pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Dismissal of a pro se complaint is appropriate when the complaint fails to state an

actionable claim. <u>Muller v. Bedford VA Admin. Hosp.</u>, No. CIV.A. 11-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing <u>Overton v. Torruella</u>, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

### 2.   Dr. Lubelczyk and Dr. Groblewski

First, Dr. Lubelczyk and Dr. Groblewski (collectively, the "Doctors") have moved to dismiss all twelve counts against them pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that the facts alleged are insufficient to state a plausible claim on which relief can be granted. [ECF Nos. 26, 27]. Specifically, the Doctors argue that although Mr. Sepulveda alleges inadequate medical care at MCI Norfolk, he fails to connect either Dr. Lubelczyk or Dr. Groblewski to his treatment or care in the prison.

The Doctors' argument is well-taken. The Complaint names Dr. Lubelczyk as a defendant in her capacity as "Regional Medical Director, UMASS Correctional Health Care" [Compl. ¶ 160], and Dr. Groblewski in his capacity as "Doctor-in-Charge, UMASS Correctional Health Care." [<u>Id.</u> ¶ 159]. Nothing in the Complaint, however, suggests that either provider was personally involved with Mr. Sepulveda's medical care. Whereas some plaintiffs in the original <u>Stote</u> action included detailed allegations about Drs. Lubelczyk and Groblewski, Mr. Sepulveda does not mention either of the Doctors in paragraphs 224–227 of the Complaint, which are the only portions of the pleading that pertain to Mr. Sepulveda. [<u>Id.</u>].

As a result, Mr. Sepulveda has failed to state any plausible claims for relief against Dr. Lubelczyk or Dr. Groblewski. There are no allegations suggesting that either defendant was personally involved in Mr. Sepulveda's medical care or treatment. Furthermore, to the extent Mr. Sepulveda seeks to hold these defendants liable in their supervisory capacities for alleged constitutional violations committed by other employees, such claims are also deficient. In the context of a Section 1983 claim, "supervisory liability cannot be predicated on a respondeat

superior theory." <u>Whitfield v. Melendez-Rivera</u>, 431 F.3d 1, 14 (1st Cir. 2005). Rather,

supervisory liability "can be grounded on either the supervisor's direct participation in the

unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization."

<u>Id.</u> Where, as here, there are no allegations of direct participation,

> a supervisor may only be held liable where "(1) the behavior of [his]
> subordinates results in a constitutional violation and (2) the
> [supervisor's] action or inaction was *affirmatively link[ed]*' to the
> behavior in the sense that it could be characterized as 'supervisory
> encouragement, condonation or acquiescence or gross negligence ...
> amounting to deliberate indifference."

<u>Id.</u> (alterations and emphasis in original) (quoting <u>Hegarty v. Somerset Cty.</u>, 53 F.3d 1367,

1379–80 (1st Cir. 1995) (further internal quotations and citation omitted). Mr. Sepulveda's

Complaint contains no allegations that plausibly suggest an "affirmative link" between Dr.

Lubelczyk or Dr. Groblewski and the allegedly inadequate medical care that Mr. Sepulveda

received.

For the foregoing reasons, Dr. Lubelczyk and Dr. Groblewski's Motion to Dismiss [ECF

No. 26] is <u>ALLOWED</u>, and Counts I though XII are hereby <u>DISMISSED</u> as to Defendants

Lubelczyk and Groblewski pursuant to Fed. R. Civ. P. 12(b)(6).

### 3. Eighth Amendment Claim (Count I)

In Count I of the Complaint, Mr. Sepulveda alleges that the remaining defendants

violated his rights under the Eighth Amendment, which prohibits "cruel and unusual

punishments." The Eighth Amendment requires prison officials to "provide humane conditions

of confinement . . . ensure that inmates receive adequate food, clothing, shelter, and medical

care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v.</u>

<u>Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984)).

An Eighth Amendment claim based on inadequate medical treatment, however, "requires more

than 'an inadvertent failure to provide adequate medical care,' and must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)).

The "deliberate indifference to a serious medical need" standard requires a plaintiff to make a two-pronged showing of both subjective and objective indifference. See Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011). "[H]e must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety . . . .'" Id. (quoting Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002)). This requirement means that a prison official "cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Second, a plaintiff must show that his medical need is objectively "serious." Serious medical needs include those that have been "diagnosed by a physician as mandating treatment, or [a need] that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Leavitt, 645 F.3d at 497. "The seriousness of an inmate's needs may also be determined by reference to the effect of [any] delay of treatment." Id. (internal quotations and citation omitted).

The First Circuit has observed that in the context of prison medical care, "'[d]eliberate indifference' . . . defines a narrow band of conduct." Feeney, 464 F.3d at 162. Substandard or negligent medical treatment, "even to the point of malpractice," is insufficient to state a claim under the Eighth Amendment. Id. Further, where a plaintiff's allegations "simply reflect a

disagreement on the appropriate course of treatment," those allegations also "fall[] short of alleging a constitutional violation." Id. (internal quotations and citation omitted). Instead, the care provided "must have been 'so inadequate as to shock the conscience.'" Id. (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)).

Mr. Sepulveda has alleged inadequate medical care with respect to three different medical issues, i.e., (1) neck pain and numbness; (2) dental problems; and (3) foot issues. The Court will analyze the sufficiency of his Complaint with respect to each issue he has identified.

### a.  Neck pain and numbness

Under a most liberal construction, Mr. Sepulveda's Complaint alleges facts sufficient to state a plausible Eighth Amendment claim for deliberate indifference to his neck pain and numbness. Although "[t]he right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice," Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981), the Complaint, liberally construed, alleges more than a mere disagreement over the proper course of treatment. Taking the allegations in the light most favorable to Mr. Sepulveda, the Complaint alleges that prison officials and treatment providers at MCI-Norfolk are aware of Mr. Sepulveda's ongoing, debilitating pain and numbness in his neck and extremities, which is severe enough to wake him up 3 to 5 times a night, and which significantly limits his ability to perform simple and vital tasks like brushing his own teeth. Further, although Mr. Sepulveda was initially prescribed Neurontin, he suffered from certain side effects of this medication, and his care providers have been unwilling to prescribe any further medication or treatment to relieve Mr. Sepulveda's pain, despite the availability of other treatments. Each time that Mr. Sepulveda raises the issue with his providers, the doctor states that he is "looking into something," but Mr.

Sepulveda has not received any further treatment apart from being told to roll up a towel under his neck at night.

Although the Court has some doubts that Mr. Sepulveda will be able to establish conduct amounting to "deliberate indifference" to his "serious medical needs," this issue is better resolved on a motion for summary judgment or at trial, once the relevant facts have been discovered. For purposes of Defendants' motions to dismiss, the Court finds that Plaintiff has stated sufficient facts (albeit barely) to nudge his Eighth Amendment claim across the line from conceivable to plausible.

### b. Dental Issues

Mr. Sepulveda also takes issue with his dental care in MCI-Norfolk. He first alleges that his dentist took too long to fill a tooth, resulting in an infection. This allegation does not suffice to state a viable Eighth Amendment claim, as mere negligence in providing care does not rise to the level of deliberate indifference required for an Eight Amendment violation. See Feeney, 464 F.3d at 162.

Next, Mr. Sepulveda describes how, in the summer of 2012, he was seen several times by dental providers to address problems with his teeth, several of which needed to be extracted. He claims that although he "started experiencing issues with his teeth, pain" in June 2012, he "received no pain medication until August 8, 2012." [Compl. ¶ 226]. He also alleges that he filed a grievance with Deputy Superintendent Sumner. [Id.]. Although Sumner responded to his grievance, Mr. Sepulveda asserts that her response "fail[ed] to mention" that his tooth pain began long before he received pain medication on August 8, 2012.[4] Mr. Sepulveda also alleges that

---

[4] It is unclear whether Mr. Sepulveda made a contemporaneous complaint to Deputy Sumner, or whether he submitted a grievance after his dental issues resolved. It appears that at the time she responded to the grievance, Mr. Sepulveda had not yet undergone oral surgery. Thus, for purposes of the defendants' motions to dismiss, the Court will liberally construe the Complaint

although his teeth needed to be extracted, oral surgery was not performed until "months later."
[Id.].

Given the plaintiff's pro se status, the Court must construe the allegations liberally, and draw all reasonable inferences in favor of Mr. Sepulveda. Under the most liberal construction, the Complaint describes a more than two-month delay in providing any pain medication, and a delay of several months in performing necessary oral surgery, despite repeated complaints by the plaintiff. These allegations are sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Villanueva v. Franklin Cty. Sheriff's Office, 849 F. Supp. 2d 186, 191 (D. Mass. 2012) (denying motion to dismiss, where prisoner alleged that he suffered from "severe, debilitating pain in his mouth" over a one-month period, and that defendants knew of this pain but failed to provide medical treatment other than "ineffective pain medication"); Cardona-Santiago v. Corr. Health Servs. Corp., No. CIV. 13-1348 DRD, 2015 WL 1417425, at *9 (D.P.R. Mar. 27, 2015) ("denying a prisoner effective pain medication" may constitute inadequate medical care in violation of the Eighth Amendment). Although the Court has some doubts about the seriousness of Mr. Sepulveda's alleged medical needs, and the inadequacy of defendants' response, these issues may be more easily resolved at summary judgment, once the Court has the benefit of additional facts. At this stage of the proceedings, the Court finds that Mr. Sepulveda has stated a plausible Eighth-Amendment claim for inadequate dental care.[5]

---

to allege that Deputy Sumner had contemporaneous knowledge of Mr. Sepulveda's alleged tooth pain, and declined to take action.

[5] The Complaint does not allege that Mr. Sepulveda continues to experience any tooth pain or other dental problems. Accordingly, the Court sees no basis for injunctive relief on this claim, and construes Mr. Sepulveda's claim to be limited to damages.

### c. Foot Problems

Mr. Sepulveda's Complaint contains a single paragraph alleging that he suffers from various foot issues, including pain in his right ankle, pain and weakness in his Achilles, bone spurs, and serious toe nail fungus, which he believes are "no[t] being adequately addressed." [Compl. ¶ 227]. Specifically, he alleges that he has "not been allowed to see Dr. King the foot doctor." [Id.]. It is not clear to the Court whether Mr. Sepulveda is alleging that prison officials have refused to provide *any* medical care for his foot problems, or whether the prison officials merely declined his requests to see a specialist (Dr. King). Again, because Mr. Sepulveda is proceeding pro se, the Court will liberally construe the Complaint to allege that prison officials have declined to provide any medical care for Mr. Sepulveda's foot issues. Thus, the Court also finds that Mr. Sepulveda has alleged a minimally sufficient Eighth Amendment claim with respect to his alleged foot problems.

To summarize – the Court has found that Mr. Sepulveda has alleged plausible Eighth Amendment claims with regards to his alleged neck pain and numbness, his foot problems, and his dental issues. However, for the reasons discussed in Part III(B), *infra*, Mr. Sepulveda's Section 1983 claim for inadequate medical care under the Eighth Amendment will nonetheless be dismissed as to all defendants, with the exception of (1) his claim for inadequate dental care against defendant Sumner in her individual capacity; and (2) his claim for injunctive relief with respect to his neck pain and foot problems against Sumner and other prison officials in their official capacities.

### d. Conspiracy Claims

To the extent that Count I also alleges that defendants conspired to violate plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1985, these claims are dismissed, as Mr. Sepulveda has not alleged sufficient facts to make out a plausible claim for a civil rights conspiracy.

First, Mr. Sepulveda's Complaint fails to state a claim under 42 U.S.C. § 1985(3), which prohibits two or more persons in any State or Territory from conspiring to deprive any person or class of persons of the equal protection of the laws. See Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (citing 42 U.S.C. § 1985(3)). A conspiracy claim arising under Section 1985(3) must contain four elements. Perez-Sanchez, 531 F.3d at 107.

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

Id. With respect to the second, "equal protection" element, the plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). The First Circuit requires plaintiffs to prove that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious. Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996). In this case, however, Mr. Sepulveda does not allege that he is a member of a protected class, nor does he allege that defendants' failure to provide adequate medical care was the result of a class-based, discriminatory animus. See Farese v. Scherer, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) (holding that prisoners are not a protected class under Section 1985(3)); Rose v. Leaver, 35 F. App'x 191, 193 (6th Cir. 2002) (affirming dismissal of state prisoner's

Section 1985 conspiracy claim). Consequently, Mr. Sepulveda has failed to state a claim under 42 U.S.C. § 1985(3).

The Complaint also fails to allege a plausible conspiracy claim under 42 U.S.C. § 1983. To state a Section 1983 conspiracy claim, a plaintiff must allege both a conspiratorial agreement, and an actual deprivation of a right secured by the Constitution and laws. See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001); Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). While courts have acknowledged that the "agreement" element of a conspiracy claim "is seldom susceptible of direct proof," and that "more often than not," an agreement "must be inferred from all the circumstances," Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988), this does not excuse Mr. Sepulveda from alleging "enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 550 U.S. at 556. Here, nothing in the Complaint plausibly suggests that any of the defendants agreed – either tacitly or expressly – to deny Plaintiff his requested medical treatments, or to provide him with inadequate care. Because Mr. Sepulveda's Section 1983 conspiracy claim fails to adequately allege the essential element of an "agreement," he has failed to state a claim on which relief may be granted. See Segelman v. City of Springfield, 561 F. Supp. 2d 123, 125 (D. Mass. 2008) (dismissing conspiracy claim against all defendants, where plaintiff "failed to allege any facts whatsoever supporting the existence of a conspiratorial agreement").

As Mr. Sepulveda has not alleged sufficient facts to allege a plausible conspiracy claim under either 42 U.S.C. § 1983 or § 1985, the conspiracy claim alleged in Count I is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[6]

---

[6]To the extent that Mr. Sepulveda's Complaint alleges any claims for common-law civil conspiracy, these claims fail for the same reasons as his Section 1983 conspiracy claim. See Soni v. Boston Med. Ctr. Corp., 683 F. Supp. 2d 74, 100–01 (D. Mass. 2009). Further, to the extent

### 4.   United Nations Convention Against Torture (Count II)

Count II of the <u>Stote</u> Complaint alleges that defendants violated and conspired to violate the United Nations Convention Against Torture ("CAT"). The CAT "criminalizes torture outside the United States, but does not provide civil redress for torture within the United States." <u>Johnson v. Hodgson</u>, No. CV 12-10913-MLW, 2015 WL 5609960, at *6 (D. Mass. Sept. 22, 2015) (internal quotations and citations omitted). Moreover, courts have held that the CAT does not create a private cause of action, and cannot be used as the basis for any civil liability. <u>See Renkel v. United States</u>, 456 F.3d 640, 644 (6th Cir. 2006); <u>Horstkotte v. N.H. Dep't of Corr., Comm'r</u>, No. CIV. 08-CV-61-JL, 2008 WL 2401565, at *7 (D.N.H. June 10, 2008). Therefore, Count II of the Complaint is dismissed as against all remaining defendants for failure to state a claim upon which relief may be granted.

### 5.   Religious Discrimination (Count III)

Count III of the Complaint alleges that the defendants violated inmates' First Amendment rights under the U.S. Constitution, as well as the common law of the Commonwealth of Massachusetts, when they failed to waive the "liver biopsy requirement" for Hepatitis C treatments. Mr. Sepulveda, however, has not alleged that he in particular has experienced any religious discrimination, that he was treated for Hepatitis C, or that he was subjected to any liver biopsy requirement. Consequently, Mr. Sepulveda fails to state a claim upon which relief can be granted, and Count III is dismissed as to all remaining defendants pursuant to Fed. R. Civ. P. 12(b)(6).

---

that Counts II, III and IV also allege a conspiracy, these claims too are dismissed for the reasons detailed herein.

### 6. Retaliation (Count IV)

Count IV of the Complaint alleges that the defendants unlawfully retaliated against inmates for exercising their right to seek redress for their injuries, and in doing so, violated 42 U.S.C. § 1983. Again, however, Mr. Sepulveda has failed to allege any facts plausibly suggesting that the Defendants' failure to provide him with adequate medical care was retaliatory. Therefore, Count IV is also dismissed as to all defendants for failure to state a claim.

### 7. Equal Protection Claim (Count V)

Count V of the Complaint alleges that the defendants' actions and inactions deprived plaintiffs of their equal protection rights under the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause "requires that 'all persons similarly situated . . . be treated alike.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "To establish an equal protection violation, a plaintiff must introduce sufficient evidence from which a jury reasonably could conclude that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration . . . ." Kuperman v. Wrenn, 645 F.3d 69, 77–78 (1st Cir. 2011). Here, Mr. Sepulveda alleges inadequate medical treatment, but he does not allege that his medical treatment was different from that afforded to other, similarly-situated inmates. See Restucci v. Clarke, 669 F. Supp. 2d 150, 158 (D. Mass. 2009) (dismissing inmate's equal protection claim challenging "double bunking" policy, where there was "no allegation that other inmates similarly situated to him were not ordered to be double-bunked").[7] Further, courts have

---

[7] The Stote Complaint does contain oblique references to discriminatory treatment against non-English speaking inmates (Compl. ¶ 2), and possible religious discrimination in connection with Hepatitis C treatment (Id. ¶ 855). Mr. Sepulveda, however, does not allege that he experienced any type of discriminatory treatment based on these or other factors. (Id. ¶¶ 224–27).

held that prisoners do not constitute a suspect class for purposes of equal protection claims. See Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000); Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990). Consequently, Mr. Sepulveda's Complaint fails to allege a plausible equal protection claim, and Count V of the Complaint is therefore dismissed as against all remaining defendants for failure to state a claim upon which relief can be granted.

### 8. Massachusetts Declaration of Rights (Count VI)

Count VI of the Stote Complaint alleges that Defendants' conduct violated plaintiffs' state constitutional rights.[8] Although the Complaint purports to state a direct claim under the Massachusetts Declaration of Rights, courts have held that in most circumstances, plaintiffs may not bring direct claims under the state constitution. See Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 71 (D. Mass. 2002). Instead, they must bring a claim under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, §§ 11H, 11I ("MCRA"), which "provides a cause of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation, or coercion." Cox v. Mass. Dep't of Corr., 18 F. Supp. 3d 38, 48 (D. Mass. 2014) (quoting Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989)); see also Almeida v. Rose, No. CIV.A.12-11476-PBS, 2013 WL 6524652, at *7 (D. Mass. Dec. 9, 2013) ("[T]o the extent [plaintiff] seeks to bring a state constitutional claim, the vehicle for doing so is through the MCRA."); Martino v. Hogan, 37 Mass. App. Ct. 710, 720 (1994) (noting that Section 1983 and its state analog, the MCRA, are thought to "occupy the field" of constitutional claims). Thus, the Court will liberally construe the state constitutional claims in alleged in the Complaint as arising under the MCRA.

---

[8] The Complaint also makes reference to state constitutional claims in Counts III and XI.

To establish a claim under the MCRA, a plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion." Bally, 403 Mass. at 717.[9] Generally, a "direct violation" of a person's constitutional rights, standing alone, does not implicate the MCRA. Longval v. Comm'r of Corr., 404 Mass. 325, 333 (1989) ("A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act."). Instead, the MCRA "contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 314 (D. Mass. 2012) (citing Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009)).

Here, Mr. Sepulveda has not alleged a plausible claim under the MCRA, because there are no allegations that any defendant interfered with Mr. Sepulveda's state or federal constitutional rights by way of threats, intimidation, or coercion. Rather, the Complaint merely alleges that defendants (1) declined Mr. Sepulveda's request for a Gel shot injection as treatment for his neck condition; (2) failed to provide adequate medical care and pain medication for his dental issues; and (3) prevented him from seeing Dr. King for various foot conditions. Failing to provide adequate medical treatment is not, in and of itself, a threatening, intimidating, or

---

[9] A "threat" "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. Id. "Coercion" involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id.

coercive act. Therefore, even if these allegations were sufficient to state a claim for violations of

the Eighth Amendment, they do not support a corresponding claim under the MCRA. Further,

Mr. Sepulveda alleges no other facts plausibly suggesting that defendants denied Mr. Sepulveda

adequate medical care as a means of threatening, coercing, or intimidating him into giving up

any of his other civil rights.

In sum, Mr. Sepulveda's allegations of inadequate medical treatment are not sufficient to

state claim under the MCRA. See Maraj v. Massachusetts, 836 F. Supp. 2d 17, 31 (D. Mass.

2011) (dismissing inmate's MCRA claim based on excessive force, where complaint did not

allege "the type of threatening or coercive conduct contemplated by the MCRA"); Gallagher v.

Commonwealth of Massachusetts, No. CIV.A. 00-11859-RWZ, 2002 WL 924243, at *3 (D.

Mass. Mar. 11, 2002) (dismissing prisoner's MCRA claim, and noting that plaintiff is required to

show "not merely infringement of a constitutional right, but infringement by means of threats,

intimidation or coercion") (internal quotations and citation omitted). Accordingly, Count VI is

dismissed with respect to all remaining defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure

to state a claim upon which relief can be granted.[10]

### 9.  Americans With Disabilities Act (Count VII)

Count VII of the Stote Complaint alleges that all defendants violated the Americans with

Disabilities Act ("ADA") by failing to provide plaintiff prisoners with adequate medical care,

failing to provide medication, and refusing to provide certain accommodations (such as single

cells or stand-up lockers). [Compl. ¶ 869]. Count VII also alleges that many plaintiffs were

"retaliated against, made fun [of], and teased after filing the needed reasonable accommodation

---

[10]To the extent that Counts III and XI also allege state constitutional claims, these claims are also dismissed for the same reasons.

claim. [Id. ¶ 869]. The Court will assume that Mr. Sepulveda intends to pursue the ADA claim alleged in the State Complaint, to the extent that his specific allegations in paragraphs 224–227 (regarding inadequate medical care) may support the allegations in Count VII.

With regard to the "reasonable accommodation" claim and the related retaliation claim, Mr. Sepulveda has not alleged that he requested or that defendants denied him any requested accommodation, or that they retaliated against him with respect to a request for reasonable accommodation. Thus, the Court finds the "reasonable accommodation" claim unsupported as to Mr. Sepulveda.

The Court construes the balance of Count VII as alleging a deprivation of medical care based on a disability. This claim would arise under Title II of the ADA, which prohibits discrimination by governmental entities in the operation of public services, programs, and activities. See Buchanan v. Maine, 469 F.3d 158, 170 (1st Cir. 2006). To prevail on a Title II claim, a plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Buchanan, 469 F.3d at 170–71.

After carefully parsing Mr. Sepulveda's Complaint, the Court finds that he has not alleged a plausible claim under Title II of the ADA. Assuming, arguendo, that Mr. Sepulveda's alleged medical problems make him a "qualified individual with a disability," and acknowledging that "[m]edical care is one of the 'services, programs, or activities' covered by [Title II of] the ADA," Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 284 (1st Cir. 2006), Mr. Sepulveda has still not alleged any facts plausibly suggesting that he was excluded from participation in, or denied the benefits of, a public service, program, or activity, or was otherwise

discriminated against *by reason of this disability*. Even when most liberally construed, the Complaint suggests that Mr. Sepulveda's medical providers at MCI-Norfolk failed to treat (or failed to adequately treat) his medical conditions, and that certain providers may have been negligent in providing care. The First Circuit, however, has held that for inadequate medical care to give rise to a claim under the ADA or the Rehabilitation Act, the denial of care "must be framed within some larger theory of disability discrimination." <u>Kiman</u>, 451 F.3d at 284 (quoting <u>Lesley v. Chie</u>, 250 F.3d 47, 55 (1st Cir. 2001)).

> For example, a plaintiff may argue that her physician's decision was so unreasonable-in the sense of being arbitrary and capricious-as to imply that it was pretext for some discriminatory motive, such as animus, fear, or apathetic attitudes. Or, instead of arguing pretext, a plaintiff may argue that her physician's decision was discriminatory on its face, because it rested on stereotypes of the disabled rather than an individualized inquiry into the patient's condition-and hence was unreasonable in that sense.

<u>Id.</u> (quoting <u>Lesley</u>, 250 F.3d at 55).

Here, Mr. Sepulveda's allegations do not plausibly suggest any discriminatory motive behind his providers' failure to adequately treat his medical conditions, or that his providers' treatment decisions rested on stereotypes about Mr. Sepulveda's conditions, as opposed to an individualized inquiry into his medical needs. In similar circumstances, courts have held that bare allegations of inadequate or negligent medical care, unaccompanied by facts suggesting a discriminatory animus, do not state a claim under Title II of the ADA. <u>See</u> <u>Boldiga v. Fed. Bureau of Prisons</u>, No. CIV.A. 14-12135-MBB, 2015 WL 3505261, at *10 (D. Mass. June 3, 2015) (collecting cases). The Court holds that Mr. Sepulveda's allegations are similarly insufficient to "nudge" his ADA claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Count VII is therefore dismissed as to all remaining defendants for failure to state a claim on which relief may be granted.

### 10. Negligence (Count VIII)

Count VIII of the Complaint alleges that defendants were negligent in providing medical care to the inmates, and that the inmates suffered harm as a result. The allegations pertaining to Mr. Sepulveda in particular allege that certain providers and prison officials breached their duty of care by providing inadequate medical treatment for Mr. Sepulveda's neck pain, dental pain, and foot problems. Although Mr. Sepulveda's factual allegations state a plausible claim for negligence, this claim is nonetheless not viable against any of the remaining defendants, based on sovereign immunity and the Massachusetts Tort Claims Act, as discussed in Part III(B), *infra*. Therefore, Count VIII will be dismissed as to all remaining defendants.

### 11. Infliction of Emotional Distress (Counts IX and X)

The Complaint next alleges that the defendants are liable for intentional infliction of emotional distress (Count IX), and negligent infliction of emotional distress (Count X). Mr. Sepulveda, however, nowhere alleges that he has suffered severe emotional distress as a result of his allegedly inadequate medical treatment at MCI-Norfolk. Thus, Counts IX and X are hereby dismissed as against all remaining defendants for failure to state a claim upon which relief may be granted.

### 12. Failure to Train and Supervise (Count XI)

Count XI of the Complaint alleges that defendants violated inmates' state and federal constitutional rights by failing to train and supervise correctional officers and health care personnel at MCI Norfolk. The Court construes Count XI as a claim arising under 42 U.S.C. § 1983 and the Eighth Amendment, alleging that defendants are responsible for the inadequate medical care provided to the inmates by virtue of their failure to properly train and supervise those individuals directly responsible for providing treatment. Mr. Sepulveda, however, does not allege any facts plausibly suggesting that his allegedly inadequate medical care was caused by

anyone's failure to train or supervise. See Jaundoo v. Clarke, 690 F. Supp. 2d 20, 32 (D. Mass. 2010). Instead, he simply alleges that various providers at MCI Norfolk failed provide him with adequate treatment for his neck pain and numbness, dental issues, and foot problems. These allegations do not make out a plausible claim for failure to train and supervise. Consequently, Count XI is dismissed as to all remaining defendants for failure to state a claim upon which relief may be granted.

### 13. Future Harm (Count XII)

Count XII seeks "future harm benefits" against the UMCH and the DOC, and states that if the defendants lose at trial, all plaintiffs request an order from the Court requiring defendants to create a "trust" that would guarantee all plaintiffs access to adequate health care. The Court therefore construes Count XII not as a separate legal claim, but as a request for relief based on claims alleged elsewhere in the Complaint.

### B.  Specific Defendants' Motions to Dismiss

For the reasons discussed in Part III(A), *supra*, of this Memorandum and Order, Mr. Sepulveda's Complaint fails to state a plausible claim for relief, with two exceptions. First: his Section 1983, Eighth Amendment claim in Count I survives as to his claims of inadequate medical care for his neck pain, dental issues, and foot problems. Second, Mr. Sepulveda has stated a facially plausible negligence claim in Count VIII. The Court will now consider whether these remaining claims may go forward against any of the remaining defendants.

### 1.  UMCH is immune from suit under the Eleventh Amendment.

UMCH has moved to dismiss all claims against it, arguing that as an agency of the Commonwealth of Massachusetts, it is immune from suit under the Eleventh Amendment to the United States Constitution. "As a general matter, 'states are immune under the Eleventh Amendment from private suit in the federal courts.'" Wojcik v. Mass. State Lottery Comm'n,

300 F.3d 92, 99 (1st Cir. 2002) (quoting Greenless v. Almond, 277 F.3d 601, 606 (1st Cir.

2002)). Eleventh Amendment immunity bars claims against the states in federal court, unless

Congress has validly abrogated a state's immunity through "appropriate legislation," or the state

itself has elected to waive its immunity by consenting to suit. Davidson v. Howe, 749 F.3d 21, 28

(1st Cir. 2014). If Congress intends to abrogate the states' sovereign immunity, its intentions

must be "unmistakably clear in the language of the statute." Id. Similarly, a state can waive its

own immunity only through a "clear declaration that it intends to submit itself to the jurisdiction

of a federal court . . . by participating in a federal program that requires waiver of immunity as an

express condition . . . or by affirmative litigation conduct." Id. (internal citations omitted).

Eleventh Amendment immunity also extends "to any entity that is an arm of the state."

Wojcik, 300 F.3d at 99 (internal quotations and citation omitted). The First Circuit uses a two-

part test to determine whether an entity is an "arm of the state." Breneman v. U.S. ex rel. F.A.A.,

381 F.3d 33, 39 (1st Cir. 2004). In the first step, the court examines a variety of "structural"

factors to determine whether the state "clearly structured the entity to share its sovereignty." Id.

(internal quotations and citation omitted). Those structural factors include:

> (1) whether the agency has the funding power to enable it to satisfy
> judgments without direct state participation or guarantees; (2) whether
> the agency's function is governmental or proprietary; (3) whether the
> agency is separately incorporated; (4) whether the state exerts control
> over the agency, and if so, to what extent; (5) whether the agency has
> the power to sue, be sued, and enter contracts in its own name and right;
> (6) whether the agency's property is subject to state taxation; and (7)
> whether the state has immunized itself from responsibility for the
> agency's acts or omissions.

Wojcik, 300 F.3d at 99. If the factors "point in different directions," the court moves to the

second step of the analysis, where the "dispositive question" is whether damages "will be paid

from the public treasury." Fresenius Med. Care Cardiovasc. Res., Inc. v. P.R. & Caribbean

Cardiovasc. Ctr. Corp., 322 F.3d 56, 65, 68 (1st Cir. 2003).

In support of its motion to dismiss, UMCH has submitted the Affidavit of Dyana Nickl, former Senior Director of Program Operations for UMCH. [ECF No. 25-1 ("Nickl Aff.")].[11] The Nickl Affidavit sets forth the following additional facts, none of which Mr. Sepulveda has disputed:

UMCH was a program designed to provide medical care to inmates at Massachusetts state prisons. [Nickl Aff. ¶ 4]. UMCH was not, however, a separately incorporated entity. [Id. ¶¶ 4, 5]. Rather, UMCH was managed by employees of the University of Massachusetts Medical School ("UMASS Medical School"). [Id. ¶ 6]. UMASS Medical School is part of the University of Massachusetts. [Id. ¶ 2]. UMCH did not have any sources of funding independent of UMASS Medical School. [Id. ¶ 7]. To the extent that UMCH had any property, it was owned by UMASS Medical School, and was not subject to taxation by the Commonwealth of Massachusetts. [Id. ¶¶ 9–10]. Further, the individuals who provided medical services and worked for UMCH were employees of UMASS Medical School. [Id. ¶ 10]. All monies generated by UMCH were deposited in the general treasury of the University of Massachusetts; likewise, any judgment that might enter against UMCH in this case would be satisfied by the Commonwealth of Massachusetts, or by insurance purchased by UMASS Medical School. [Id. ¶¶ 12–13]. Finally, Ms. Nickl explains that despite the historical relationship between UMCH and the Massachusetts Department of Corrections, UMCH is no longer the contracted medical provider for the DOC. [Id. ¶ 14].

Based on the facts set forth in the Nickl Affidavit, the Court has little trouble concluding that UMCH is an "arm of the state" entitled to Eleventh Amendment immunity. UMCH was, for

---

[11]Insofar as UMCH has moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court may consider materials outside of the pleadings, including the Nickl Affidavit. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

all intents and purposes, a program run by UMASS Medical School. Judges in this District have uniformly held that under the First Circuit's multi-factor test, the University of Massachusetts and UMASS Medical School are arms of the Commonwealth of Massachusetts. BT INS, Inc. v. Univ. of Mass., No. CIV.A. 10-11068-DPW, 2010 WL 4179678, at *2 (D. Mass. Oct. 19, 2010) (collecting cases); see also, e.g., Cutts v. Dennehy, No. CIVA09-10902-DPW, 2010 WL 1344977, at *1 (D. Mass. Mar. 30, 2010) ("It is well settled among judges of this court that the University of Massachusetts, its Medical School and the programs of its Medical School are agencies of the Commonwealth."); Rasheed v. Newry, No. CIV.A. 12-12094-RGS, 2013 WL 2632598, at *3 (D. Mass. June 12, 2013); Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 60 (D. Mass. 2002). I similarly conclude that with regard to UMASS Medical School and UMCH, the relevant "structural factors" point decidedly in the direction of sovereign immunity. Further, the Nickl Affidavit confirms that any judgment against UMCH in this case would be paid from the Commonwealth's coffers. [Nickl Aff. ¶ 13]. As a result, the Court holds that UMCH is an arm of the Commonwealth of Massachusetts, and therefore entitled to immunity under the Eleventh Amendment.

This conclusion disposes of all remaining claims against UMCH in Counts I and VIII. First, Mr. Sepulveda's Section 1983 claims against UMCH are barred by the Eleventh Amendment. See McGee v. UMass Corr. Health, No. 09-40120-FDS, 2010 WL 3464282, at *2 (D. Mass. Sept. 1, 2010) (dismissing claims against UMCH on sovereign immunity grounds); see also Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'") (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). There is no indication that the Commonwealth has waived its sovereign immunity for these claims, or otherwise consented to suit. See Coggeshall

v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010) (affirming

dismissal of Section 1983 claims against state defendants, noting that "Massachusetts has neither

consented to be sued for damages in a federal court in the circumstances of this case nor waived

its Eleventh Amendment immunity").[12] Therefore, all claims alleged against UMHC in Count I

will be dismissed.

For similar reasons, Mr. Sepulveda's state-law negligence claim against UMCH is also

barred. Although Massachusetts Tort Claims Act ("MTCA") abrogates the doctrine of sovereign

immunity for certain tort claims, it does so "only to the extent provided in the statute." Titus v.

Town of Nantucket, 840 F. Supp. 2d 404, 411 (D. Mass. 2011). It is well-established that the

MTCA's waiver of sovereign immunity extends only to claims brought in state court. Thus, the

Commonwealth may continue to assert sovereign immunity as a defense to claims brought in

federal court. See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing Rivera v.

Massachusetts, 16 F. Supp. 2d 84, 87–88 (D. Mass. 1998) (citing Irwin v. Comm'r of Dep't of

Youth Servs., 388 Mass. 810 (1983))). Accordingly, Mr. Sepulveda's negligence claim against

UMCH in Count VIII is barred by the Eleventh Amendment, and this claim is hereby dismissed

as to UMCH pursuant to Fed. R. Civ. P. 12(b)(1).

### 2.   The DOC Defendants

The DOC, as well as defendants Spencer, Sumner, and Roden (collectively, the "DOC

Defendants") have moved to dismiss the Complaint on various legal grounds.

---

[12] Although the Eleventh Amendment does not necessarily bar claims for injunctive or
declaratory relief against a state official in his or her official capacity, see Greenless, 277 F.3d at
606–07 (citing Ex parte Young, 209 U.S. 123 (1908)), any claim for injunctive relief against
former UMHC officials is now moot. As set forth in the Nickl Affidavit, UMHC no longer
provides medical services to inmates with the Massachusetts DOC. [Nickl Aff. ¶ 14]; see
Davidson, 749 F.3d at 23.

### a. The DOC is immune from suit under the Eleventh Amendment.

All remaining claims against the DOC itself in Counts I and VIII must also be dismissed

on sovereign immunity grounds. The Massachusetts Department of Correction is an agency of

the Commonwealth and thus entitled to Eleventh Amendment immunity. See Hannon v. Beard,

979 F. Supp. 2d 136, 139 (D. Mass. 2013) (citing Poirier, 558 F.3d at 97). Therefore, all

remaining claims against the DOC in Counts I and VIII are dismissed pursuant to Fed. R. Civ. P.

12(b)(1), regardless of the relief sought.

### b. Spencer, Sumner, and Roden

### a. Official Capacity Claims

In addition to barring suits against the DOC itself, the Eleventh Amendment also shields

state officials from being sued for damages in their official capacities. Redondo-Borges v. U.S.

Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005). Therefore, all claims for damages in

Counts I and VIII against the former DOC Commissioner Spencer, former Superintendent

Roden, and Deputy Superintendent Sumner in their official capacities are hereby dismissed

pursuant to Fed. R. Civ. P. 12(b)(1).

The Eleventh Amendment does not, however, prevent a plaintiff from seeking

prospective injunctive relief against a state official in his or her official capacity. See Greenless,

277 F.3d at 606–07 (citing Ex parte Young, 209 U.S. 123). Thus, to the extent Mr. Sepulveda

seeks injunctive relief with respect to his remaining Section 1983 claim in Count I for inadequate

medical care (specifically, his neck pain and foot problems),[13] he may maintain a claim against

the appropriate prison officials in their official capacities. The Stote Complaint, filed in June

---

[13] The Complaint does not allege any facts suggesting that the allegedly inadequate dental care is
an ongoing problem. Thus, the Court construes Count I to seek only damages for the allegedly
inadequate dental care, and not injunctive relief.

2014, names Spencer in his official capacity as Commissioner of the DOC, Roden in his official

capacity as Superintendent of MCI Norfolk, and Sumner in her official capacity as Deputy

Superintendent at MCI Norfolk. [Compl. ¶¶ 158, 171, 172]. This official capacity claim for

injunctive relief may proceed as to Deputy Superintendent Sumner, the current Commissioner of

the DOC and the current Superintendent of MCI Norfolk. Because Spencer is no longer the DOC

Commissioner, and Roden is no longer the Superintendent at MCI Norfolk, the Court will order

that the current Commissioner of the DOC, and the current Superintendent of MCI Norfolk be

substituted as parties pursuant to Fed. R. Civ. P. 25(d). This substitution shall apply only to Mr.

Sepulveda's remaining official-capacity claims for prospective injunctive relief under Section

1983.

### b.  Individual capacity claims

Mr. Sepulveda has also named Sumner, Spencer, and Roden in their individual capacities.

Mr. Sepulveda may not maintain a common-law negligence claim against any of these

defendants, insofar as the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. c. 258, § 2,

insulates public employees from negligence claims, as long as the employee was acting within

the scope of her employment. Where the underlying claim is one of "ordinary negligence," the

claim "may not be asserted against the public employee, but may be brought against the public

employer." Parker v. Chief Justice For Admin. & Mgmt. of Trial Court, 67 Mass. App. Ct. 174,

180 (2006). The MTCA thus "shields public employees from personal liability for negligent

conduct." Canales v. Gatzunis, 979 F. Supp. 2d 164, 174 (D. Mass. 2013) (internal quotations

and citations omitted). Consequently, Mr. Sepulveda's negligence claim in Count VIII is

dismissed as to defendants Sumner, Spencer, and Roden pursuant to Fed. R. Civ. P. 12(b)(6).

Finally, Mr. Sepulveda's Section 1983 claim for inadequate medical care under the

Eighth Amendment must also be dismissed as to defendants Roden and Spencer in their

individual capacities. Although the Complain alleges that Roden was Superintendent of MCI

Norfolk, and that Spencer was the DOC Commissioner, nothing in the Complaint suggests that

either Roden or Spencer was personally involved in Mr. Sepulveda's medical treatment or care,

or that their alleged failure to train and supervise was affirmatively linked to the actions of any

subordinate.[14] Therefore, Mr. Sepulveda's Section 1983 claim in Count I is dismissed as to

defendants Spencer and Roden in their individual capacities pursuant to Fed. R. Civ. P. 12(b)(6).

In contrast, however, Mr. Sepulveda alleges specific facts plausibly suggesting that

Sumner had actual knowledge of his dental problems and tooth pain, and that she reviewed and

responded to grievances filed by Mr. Sepulveda on this subject. Therefore, Mr. Sepulveda's

Section 1983 claim may proceed against defendant Sumner in her individual capacity, but only

with respect to the allegations in Paragraph 226 of the Complaint, which pertain to Mr.

Sepulveda's dental issues. As Sumner is not alleged to have been aware of or involved in any

decisions related to Mr. Sepulveda's neck pain or foot problems, these portions of his Section

1983 claim in Count I are also dismissed as to Sumner in her individual capacity.

To summarize, the following two claims survive defendants' motions to dismiss: (1) Mr.

Sepulveda's Section 1983 Eighth Amendment claim seeking damages for inadequate dental care,

which may proceed against defendant Sumner in her individual capacity; and (2) Plaintiff's

Section 1983 Eighth Amendment claim seeking injunctive relief for allegedly inadequate

medical treatment of Plaintiff's neck pain and foot problems, which may proceed against

---

[14] As previously discussed, supervisory liability arises under Section 1983 only where the supervisor directly participates in the allegedly unconstitutional conduct, or where the supervisor's action or inaction is affirmatively linked to the unconstitutional conduct of subordinates. See Whitfield, 431 F.3d at 14. Here, however, Mr. Sepulveda has made no allegations that either Spencer or Roden's acts or omissions affirmatively contributed to Mr. Sepulveda's inadequate medical care at MCI-Norfolk. In fact, neither Spencer nor Roden is mentioned anywhere in paragraphs 224–227 of the Complaint.

Sumner, the current DOC Commissioner, and the current Superintendent of MCI Norfolk in their official capacities.

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants' final argument is that they are entitled to summary judgment on Mr. Sepulveda's federal claims because Mr. Sepulveda did not exhaust his administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). [ECF No. 27 p. 6; ECF No. 25 p. 7–8].[15]

"Failure to exhaust is an affirmative defense that must be pled and proved by Defendants." Hudson v. MacEachern, 94 F. Supp. 3d 59, 67 (D. Mass. 2015) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). Thus, "a motion to dismiss may be granted on the ground of failure to exhaust only where 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'" Id. (quoting Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001)) (further internal quotations omitted). Here, it is not apparent from the face of the Complaint that Mr. Sepulveda failed to exhaust his administrative remedies. The defendants have supported their exhaustion argument with a series of grievance records allegedly filed by Mr. Sepulveda [ECF No. 25-2, ECF No. 27-2], but the Court cannot consider such extrinsic evidence on a motion to dismiss for failure to state a claim. See Maraglia v. Maloney, 365 F. Supp. 2d 76, 81 (D. Mass. 2005).

Although the exhaustion issue may well be dispositive of Mr. Sepulveda's remaining claims, it would be premature to convert the defendants' motions to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) before providing Mr. Sepulveda with notice and an

---

[15] UMCH and Drs. Groblewski and Lubelczyk raise this issue in their respective motions to dismiss. The motion filed by the DOC, Spencer, Sumner, and Roden incorporates this argument by reference. [ECF No. 32 p. 2].

opportunity to respond. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000). Thus, the Court will allow all remaining parties to submit additional briefing on the exhaustion issue. If appropriate, the Court may convert the remaining defendants' motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d).

Accordingly, the remaining defendants may file a renewed motion to dismiss for failure to exhaust administrative remedies no later than March 4, 2016.[16] Mr. Sepulveda shall file any further opposition no later than April 1, 2016. The parties are expressly advised that they may file materials extraneous to the pleadings in support of their arguments, and that the Court may, if appropriate, convert the motion to dismiss for failure to exhaust into a motion for summary judgment. See Fed. R. Civ. P. 12(d). When responding to the defendants' submissions, Mr. Sepulveda should explain whether there are any disputes of material fact bearing on the exhaustion question, and he should attach any documentation demonstrating that his claims were, in fact, exhausted.

## V.    CONCLUSION

For the foregoing reasons, UMCH's Motion to Dismiss [ECF No. 24] is hereby ALLOWED. Defendants Lubelczyk and Groblewski's Motion to Dismiss [ECF No. 26] is also ALLOWED. All claims against these defendants are hereby DISMISSED.

The DOC, Spencer, Roden, and Sumner's Motion to Dismiss [ECF No. 31] is ALLOWED IN PART and DENIED IN PART. Mr. Sepulveda's Section 1983 claim seeking injunctive relief for violations of his Eighth Amendment rights may go forward, but only with respect to the allegedly inadequate treatment of Mr. Sepulveda's neck pain and foot issues, as

---

[16] If the remaining defendants do not intend to renew their motion to dismiss on exhaustion grounds, they shall notify the Court in writing no later than February 19, 2016, so that the Court may set further scheduling deadlines.

identified in Paragraphs 224, 225, and 227 of the Complaint. This claim for injunctive relief may go forward against defendant Sumner in her official capacity, and against the current DOC Commissioner and the current Superintendent of MCI Norfolk in their official capacities. The Court hereby <u>ORDERS</u> that the Clerk shall substitute Carol Higgins O'Brien, in her official capacity as Commissioner of the Massachusetts Department of Correction, for Defendant Luis Spencer, and that the Clerk shall also substitute Sean Medeiros, in his official capacity as Superintendent of MCI Norfolk, for Defendant Gary Roden. <u>See</u> Fed. R. Civ. P. 25(d). Mr. Sepulveda may also pursue his Eighth Amendment claim for money damages against defendant Sumner in her individual capacity, pursuant to 42 U.S.C. § 1983, but only with respect to the allegations set forth in Paragraph 226 of the Complaint relating to Mr. Sepulveda's dental care. All other claims against the DOC, Spencer, Sumner, and Roden are hereby <u>DISMISSED</u> for the reasons set forth in this Memorandum and Order.

The remaining defendants may file, no later than <u>March 4, 2016</u>, a renewed motion to dismiss addressing their argument that Plaintiff failed to exhaust his administrative remedies with respect to his dental care and foot problems. Mr. Sepulveda may file any opposition materials no later than <u>April 1, 2016</u>.

**SO ORDERED.**

Dated: February 5, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE